**SIGNED THIS: January 15, 2009**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BERWICK BLACK CATTLE COMPANY, | ) | No. 06-82166 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| MARK RAY, | ) | No. 06-82165 |
| Debtor. | ) | |

### O P I N I O N

Chapter 11 cases that do not result in a confirmed plan usually end up converting to Chapter 7, which creditors prefer to the alternative of dismissal since Chapter 7 trustees have avoiding powers not available outside of bankruptcy. When the debtor is a farmer and opposes conversion, however, the question of what to do with a failed Chapter 11 case is much more interesting in light of Bankruptcy Code Section 1112(c) which, on its face, prohibits conversion unless requested by the farmer debtor. As between the alternatives of dismissal or the appointment of a Chapter 11 trustee, the appropriate course of action in these cases is dismissal.

It is not seriously disputed that the Debtors, Mark Ray and Berwick Black Cattle Company (individually "RAY" and "BERWICK"; together, the "DEBTORS"), are farmers as defined in the Bankruptcy Code, having received more than 80 percent of their gross income in 2005 from a cattle operation.[1]  *See* 11 U.S.C. §§ 101(20) and (21).  The nature and substance of the cattle business conducted by RAY and by BERWICK are, for all relevant purposes, indistinguishable.

Involuntary Chapter 11 petitions were filed against the DEBTORS on December 26, 2006.  The DEBTORS did not contest the petitions and orders for relief were entered on February 1, 2007.  The cases proceeded in fairly typical fashion, with the primary secured lender, High Plains Farm Credit, PCA (HIGH PLAINS), providing postpetition Debtor-in-Possession (DIP) financing to the DEBTORS.  The Chapter 11 proceedings were used by the DEBTORS to conduct an orderly liquidation of their assets, including 14,000 head of cattle located in five states valued by the DEBTORS at $15 million.  The liquidation of assets was required by HIGH PLAINS as a condition of its DIP financing, and was at least acquiesced in, if not supported, by all interested parties, including the DEBTORS, the other secured creditors, and the Official Committee of Unsecured Creditors (the "COMMITTEE").

The liquidation of the DEBTORS' assets was accomplished through a series of sales, both in the ordinary course of business and outside the ordinary course pursuant to Section 363(b) of the Bankruptcy Code.  As the senior secured lender, HIGH PLAINS was paid the bulk of the proceeds from the sale of the cattle, although various parties holding an

---

[1] The Unsecured Creditors Committee raised the possibility that the DEBTORS earned income not from farming but from selling securities or other interests in cattle or their cattle business, but declined to present any evidence in support.  The DEBTORS assert that RAY earned at least 95% and BERWICK 100% of their respective incomes from farming.

2

agister's lien under state law for the feeding and care of livestock were paid as well. Unfortunately, the sale of its collateral did not bring enough to pay HIGH PLAINS in full and it was left with an unsecured deficiency balance. As a result, the second priority secured lender, Ward Feed Yard, Inc. and ILS Financing, Inc. (together "WARD"), having asserted a claim in excess of $8 million, ended up being almost entirely unsecured.

Despite the fact that the asset sales generated much less than anticipated, a plan was nearly confirmed. On June 24, 2008, the DEBTORS filed their First Amended Joint Chapter 11 Plan and an accompanying Disclosure Statement. The Plan provides for the creation of a Liquidating Trust, the liquidation of all of the DEBTORS' nonexempt assets, the prosecution and collection of certain claims including causes of action arising under Chapter 5 of the Bankruptcy Code (except as against HIGH PLAINS, WARD and certain individuals and entities related to WARD, all of whom are granted blanket releases), the creation and capitalization by WARD and certain creditors of a cattle operation that would employ the Debtor, Mark Ray, and the conveyance of common stock in that enterprise to unsecured creditors. The Disclosure Statement was approved and the Plan was accepted by vote of the creditors. Confirmation was denied, however, because the releases granted to HIGH PLAINS and WARD were determined to be overbroad and improper. *See In re Berwick Black Cattle Co.*, 394 B.R. 448 (Bankr.C.D.Ill. 2008). The DEBTORS attempted to negotiate a modification that would be acceptable to WARD and HIGH PLAINS, but those attempts failed.

On December 9, 2008, the DEBTORS moved to dismiss their cases pursuant to Section 1112(b), asserting the existence of cause for dismissal, specifically a continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

3

The DEBTORS also contend that since they are farmers who oppose conversion to Chapter 7, conversion is not an available alternative. The United States Trustee (UST) filed motions to convert the cases to Chapter 7. The COMMITTEE also moved to convert or, in the alternative, for the appointment of a Chapter 11 Trustee. HIGH PLAINS and WARD filed pleadings in support of dismissal.

**CONVERSION**

Section 1112 of the Bankruptcy Code governs conversion or dismissal of a Chapter 11 case. Subsection (c) of Section 1112 provides as follows:

> The court may not convert a case under this chapter to a case under chapter 7 of this title if the debtor is a farmer or a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion.

This prohibition against an involuntary conversion of a farmer's Chapter 11 case to Chapter 7 is an exception to the general rule that the choice between conversion or dismissal should be determined based upon the best interests of creditors and the estate. *See* 11 U.S.C. § 1112 (b)(1). So even if creditors and the estate would benefit from conversion to Chapter 7, a Chapter 11 farmer debtor has the power to veto that alternative by not consenting, or so it appears from the plain meaning of the statute.

The UST relies upon *In re Erin Farms, Inc.*, 336 B.R. 600, 2005 WL 3303957 (6th Cir. BAP)(Unpublished), for the proposition that, once appointed, a Chapter 11 trustee could authorize conversion to Chapter 7, even over the DEBTORS' opposition. The Court disagrees. The plain meaning of Section 1112(c) indicates that the debtor controls the decision to convert. Nothing in the Code supports the supposition that appointment of a trustee deprives the debtor of that power.

4

The UST also makes the following argument. If the purpose of Section 1112(c) is to prevent the involuntary liquidation of a farmer's assets, that purpose can no longer be fulfilled since the DEBTORS' assets have already been liquidated, so Section 1112(c) is not applicable. The UST relies upon a snippet of legislative history that characterizes subsection (c) as prohibiting "the court from converting a case concerning a farmer or an eleemosynary institution to a liquidation case unless the debtor consents." H.R. No. 95-595, 95th Cong., 1st Sess. 406 (1977); S.R. No 95-989, 95th Cong., 2d Sess. 117 (1978). By voluntarily selling their assets in Chapter 11, the UST contends, the DEBTORS have, in effect, already consented to a "liquidation case" and should not be permitted, to the frustration of their creditors, to use Section 1112(c) as a shield against a result that only reflects the reality of what has already transpired. The UST also points out that the only remaining assets of the estate are avoidance actions, some of which may lie against family members or friends of Mark Ray, so that DEBTORS' efforts to block conversion and prosecution of those claims are in bad faith.

Section 1112(c) is clear and unambiguous. If a Chapter 11 case involves a debtor who is a farmer, a term defined in Section 101(20), the case may not be converted to Chapter 7 over the debtor's objection. Since each DEBTOR'S status as a "farmer" is unchallenged, and the DEBTORS oppose conversion, the statute, read literally, precludes conversion to Chapter 7.[2] The statute expresses no exception for cases where the debtor's assets have been sold off or where the debtor is no longer operating the same business

---

[2] The COMMITTEE and creditor Wayne Wilson theorized that Mark Ray may have earned income through non-farming activities, but no evidence of such was presented and no request was made for an opportunity to present evidence. The UST expressly declined to make an argument based on the supposition that either DEBTOR was not a farmer on the petition date or ceased to be a farmer thereafter.

5

enterprise or where he is acting out of self-interest. While implied exceptions are disfavored, *Southeast Alaska Conservation Council v. U.S. Army Corps of Engineers*, 486 F.3d 638, 646 (9th Cir. 2007), they may be appropriate where necessary to effectuate the clearly expressed purpose of a statute. *Mejia v. U.S. Dept. of Housing and Urban Development*, 688 F.2d 529, 532 (7th Cir. 1982).

In this Court's view, however, insufficient basis exists for the creation of an implied exception to the no conversion mandate of Section 1112(c). The single sentence of legislative history cited by the UST does little more than parrot the statute. Since all Chapter 7 cases are liquidation cases, the reference to "liquidation case" is simply a synonym for "a case under Chapter 7." It would be an unwarranted stretch to read anything more than that into the term "liquidation case." In effect, the UST's position is that the legislative history's use of "liquidation case" is intended to embody an implied limit upon the applicability of Section 1112(c). Buying this argument would require the Court to read an implied exception into the statute by reading an implied exception into the legislative history. That's two implications too many. Conversion is not an option and the UST's Motion to Convert, to the extent it requests conversion to Chapter 7, must be denied.[3]

**CHAPTER 11 TRUSTEE OR DISMISSAL**

The UST's Motion requests, in the alternative, the appointment of a Chapter 11 Trustee, a request echoed by the COMMITTEE, and by individual creditors Brown By-Products and Wayne Wilson. The appointment of a trustee is opposed by the DEBTOR,

---

[3] The UST relies upon *In re Huebner,* 58 B.R. 600 (W.D.Wis. 1986), holding that a Chapter 11 farmer debtor who fails to file a plan during the exclusivity period may be subject thereafter to a creditor's plan of liquidation, notwithstanding the prohibition against conversion to Chapter 7 in Section 1112(c) and the prohibition against putting a farmer into an involuntary Chapter 7 in Section 303(a). *Huebner* does not support the UST's argument that a farmer debtor in Chapter 11 may be forced into Chapter 7 by conversion despite the plain language to the contrary of Section 1112(c).

6

WARD and HIGH PLAINS.

A Chapter 11 trustee may be appointed under Section 1104(a), as follows:

(a)  At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>    (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>
>    (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
>    (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

The appointment of a Chapter 11 trustee is certainly unusual, even extraordinary. *Tradex Corp. v. Morse,* 339 B.R. 823, 825-26 (D.Mass. 2006). There is a strong preference for allowing a debtor in possession to control and manage its estate. *Id.* at 826.

The enumerated examples of cause for appointing a trustee include fraud, dishonesty, incompetence and gross mismanagement, each of which concerns acts or events that are intensely factual in nature and require an evidentiary hearing to determine. There is no question that the party seeking the appointment has the burden of proof, but a split of authority exists over the proper standard of proof. It appears that the majority applies a clear and convincing standard, *In re G-I Holdings, Inc.,* 385 F.3d 313 (3rd Cir. 2004), while the minority uses a preponderance of the evidence standard, *Tradex, supra.* Neither the Supreme Court nor the Seventh Circuit has decided the question. This Court finds it unnecessary to decide the issue today as its ruling does not turn on which evidentiary

7

standard applies. This matter is before the Court after argument only. No evidence was taken and all parties agreed none was necessary. Why this is so follows from the nature of the proponents' argument for a trustee rather than dismissal.

This is not a situation where the DEBTORS have ongoing operations that are being mismanaged where a trustee is needed to hire competent managers. This is not a situation where ongoing fraud or dishonesty is alleged and a trustee needs to step in to stop it. The proponents acknowledge that the sole purpose for the appointment in these cases is for a Chapter 11 trustee to do what a Chapter 7 trustee would do if the cases could be converted.[4] Therein lies the problem, say the objectors, in that the appointment would permit a result, administration of the estate according to Chapter 7 rules, that is expressly prohibited by Section 1112(c)'s prohibition against conversion. The objectors contend that since cause exists for conversion or dismissal under Section 1112(b), and conversion is not permitted, the Court has no choice but to dismiss. In reply, the proponents point to Section 1104(a)(3) which permits the appointment of a trustee even though grounds for dismissal exist if "the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1104 (a)(3).

The Court agrees with the proponents that Section 1104(a)(3) provides the authority for the appointment of a trustee notwithstanding the mandatory language of Section 1112(b) that "the court shall" convert or dismiss the case if cause is established. This is the

---

[4]There is no doubt that if conversion were an option, a Chapter 7 trustee would be preferable to a Chapter 11 trustee. *See In re Nelco Ltd.,* 210 B.R. 707 (Bankr.E.D.Va. 1997).

interpretation advocated in *Collier's*. 7 *Collier on Bankruptcy* ¶ 1104.02[3][e] (15th ed.rev.). The Court also agrees that Section 1112(c) does not operate as an absolute bar to the involuntarily liquidation of a farmer debtor in Chapter 11 under a creditor's plan of liquidation. *In re Jorgensen,* 66 B.R. 104 (9th Cir.BAP 1986), citing *Matter of Jasik,* 727 F.2d 1379 (5th Cir. 1984).[5]  So the Code does not prohibit, in so many words, what the proponents are requesting: the appointment of a Chapter 11 trustee to prosecute and collect avoidance claims and other litigation claims that are assets of the estate and the proposal and confirmation of a plan of liquidation that would pay allowed claims in the order of priority established in Section 507.

It cannot be denied, however, that conversion is preferred and that the less desirable alternative of a Chapter 11 trustee is a fallback position made necessary precisely because conversion is prohibited. Under the circumstances, appointing a Chapter 11 trustee would amount to a de facto conversion, a ploy that has been criticized and rejected in similar cases. *Matter of Sinclair*, 870 F.2d 1340 (7th Cir. 1989)(where farmer debtors sought to convert from Chapter 11 to Chapter 12 despite clear statutory prohibition); *Matter of Sadler*, 935 F.2d 918 (7th Cir. 1991)(criticizing the lower courts as having viewed any inability to convert as something to be overcome rather than respected); *Matter of Howe*, 913 F.2d 1138 (5th Cir. 1990).

If the cases are dismissed, avoidance actions will not be pursued. Preference claims would be lost. Fraudulent transfer claims would still be assertable by individual creditors

---

[5]In *Jorgensen*, however, the debtor was not seeking dismissal, but was advocating a reorganization rather than the liquidation proposed by creditors.

under the Uniform Fraudulent Transfer Act, but probably not in a common forum and not for the benefit of all creditors. The loss of those claims and the loss of the bankruptcy forum are the main reasons advocated by the movants for keeping the cases going by appointing a trustee. The COMMITTEE also points to RAY'S conduct, alleging that he solicited and obtained millions of dollars from investors in furtherance of what was nothing more than an elaborate Ponzi scheme, that WARD may have participated in or enabled the scheme, and that they should not be allowed to get away with it.

The COMMITTEE also argues that large, unpaid administrative claims exist, including fees and expenses for counsel for the petitioning creditors and the COMMITTEE in excess of $280,000, that won't be paid if the cases are dismissed. The DEBTORS' attorneys, pursuant to a procedure ordered early in the cases, have been paid a large amount of fees. The disparity is "highly inequitable" says the COMMITTEE, and could be "better balanced out" by a trustee, presumably via disgorgement of some of the DEBTORS' attorney's fees.

With respect to the allegations of prepetition fraud or impropriety by RAY and WARD, at this stage those allegations are unsubstantiated and have been denied. For purposes of the issues here, the Court will not assume the truth of those allegations. The Court draws no conclusions, one way or another, regarding those disputed and unproven claims, or the motives, culpability or character of RAY, or the alleged participation of WARD.

With respect to unpaid administrative claims, while it is certainly unfortunate if any attorney or other claimant is not paid, that possibility is well known to experienced parties,

such as counsel for the COMMITTEE. It is not infrequent that such services are rendered "on the come," at least in part. Counsel for the DEBTORS and counsel for the COMMITTEE have both enjoyed the benefits and suffered the detriments of the deals they agreed to. There is nothing inherently unfair about that. While dismissal would eliminate the estate as a source of recovery of the fees charged by the COMMITTEE'S attorneys, it would also eliminate a large claim that could adversely affect the potential recovery by the DEBTORS' prepetition creditors.

Any creditor wishing to challenge the dischargeability of a debt must have already filed an adversary proceeding under Section 523. A few such adversaries have already been filed. If the bankruptcy cases are dismissed, RAY will not receive a discharge and all creditors may sue him in another forum without having to address issues of nondischargebility.[6] In addition, those suits may be brought in the jurisdiction where the transaction occurred rather than the bankruptcy court in Peoria, Illinois, an inconvenient forum for most creditors.

A significant factor favoring dismissal is the utter insolvency of the estates – in a word, they are broke. The estates have no funds to pay any pending or future administrative claims. In contrast, the estate in *Jorgensen* involved an operating tree farm whose assets exceeded liabilities by $22 million. The liquidating plan proposed by the creditors was determined to be feasible, proposing an orderly liquidation of assets over an

---

[6] It should be noted that if certain creditors were, in fact, defrauded by RAY, those claims of fraud are personal claims of individual creditors. Such claims are not property of the estate and a trustee is without standing to assert them.

11

18-month period.

BERWICK has no remaining assets and is nothing more than an empty shell. RAY retains certain exempt property but is out of business and could not be compelled to fund a creditor's plan with his future services or earnings. The only source of funding to pay for a trustee and other continuing expenses of administration, is the chance of recovery from litigation claims at some point in the future, probably easily more than a year in the future, and probably only after substantial costs have been advanced, and with no certainty of success.[7] It is doubtful any independent and qualified person would care to undertake such a gamble by serving as trustee. With no funds on hand to pay administrative expenses or professional fees, and with the only hope of any funding being speculative litigation recoveries, the proposal to appoint a Chapter 11 trustee is simply not feasible. Something more than a wing and a prayer is necessary to justify such an extraordinary appointment.

For the foregoing reasons, the Court determines that the appointment of a Chapter 11 trustee would amount to a de facto conversion and that the movants have failed to establish that the appointment of a Chapter 11 trustee is in the best interests of creditors and the estate. The DEBTORS' motions will be granted and the cases dismissed. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Separate Orders will be entered.

---

[7] The COMMITTEE suggests that WARD'S willingness to fund ACC under the Plan to the tune of $1 million is properly construed as a recognition of the settlement value of the claims asserted by the COMMITTEE against WARD. The Court does not see it that way, having previously determined that the ACC capital structure allowed WARD substantial protection for the recovery of its investment.

###